

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LARRY DENTON, on behalf of § | | |
| Sandin Denton, a minor § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 2:04-CV-0331 | |
| § | | |
| MICHAEL J. ASTRUE, § | | |
| Commissioner of Social Security, § | | |
| § | | |
| Defendant. § | | |

**REPORT AND RECOMMENDATION TO AFFIRM**
**THE ADMINISTRATIVE DECISION**

Plaintiff LARRY DENTON, on behalf of his minor child SANDIN DENTON, brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security, denying the minor plaintiff's application for Title XVI disabled child's benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding the minor child plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

On May 6, 1999, plaintiff filed an application for social security income benefits alleging disabilities including asthma, allergic rhinitis and fibromyalgia. (Tr. 19, 150). Plaintiff alleged an onset date of September 1, 1992. (Tr. 150). At the time of filing, plaintiff was a minor with a

birth date of January 21, 1987. (*Id.*). Plaintiff's claim was denied at the administrative level and plaintiff requested a hearing before an Administrative Law Judge (ALJ). On August 28, 2000, the hearing was held before ALJ William F. Nail, Jr. (Tr. 35-77). Plaintiff was not present for the hearing, but his Mother and Father appeared on his behalf. (*Id.*). On April 26, 2001, the ALJ rendered an unfavorable decision denying plaintiff benefits. (Tr. 108-113). Plaintiff appealed the ALJ decision on the grounds one of plaintiff's physicians had erroneously withheld relevant medical records. (Tr. 123). On September 28, 2001, the Appeals Council remanded petitioner's case for another administrative hearing. (Tr. 142-44). The second hearing was held July 25, 2003, before ALJ Gerald R. Cole. Both plaintiff and his Father testified at this hearing. On May 17, 2004, the ALJ issued an unfavorable decision. (Tr. 18-23). The ALJ found the minor plaintiff had not been disabled as defined in Section 1614(a)(3)(A) of the Social Security Act. (Tr. 15). Plaintiff requested review of the ALJ's decision and on October 15, 2004 the Appeals Council issued its order denying plaintiff's request for review. (Tr. 6-8). Consequently, the determination of the ALJ became the final decision of the Commissioner.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited under 42 U.S.C. § 405(g) to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether the decision comports with relevant legal standards, *i.e.*, whether any errors of law were made. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is that relevant evidence a reasonable person would accept as

adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980). It must be more than a scintilla, but may be less than a preponderance. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Where the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164.

## III.
## DISABILITY FOR CHILDREN AND THREE STEP ANALYSIS

The evaluation process and standard for disability for children changed in 1996 pursuant to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. (Pub. L. 104-193, 110 Stat. 2105 (1996)). This Act provided a stricter standard for determining eligibility for disabled child's benefits under Title XVI. The Act, as amended, provided,

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 416.906. Unlike the more familiar adult five step sequential evaluation, the children's sequential evaluation process is comprised of three steps, pursuant to 20 C.F.R.

§416.924(a), which are summarized as follows:

<u>First Step</u>: The first step in the evaluation is whether a child is performing substantial gainful activity. If so, the evaluation stops and the child is found to be not disabled.

<u>Second Step</u>: If the child is not performing substantial gainful activity, the Commissioner will consider whether the child has an impairment or combination of impairments which are severe. If the impairment(s) are not severe, the evaluation ends and a finding of not disabled is made.

<u>Third Step</u>: Finally, if the impairments are found severe, the Commissioner will review the child's claim to determine whether any impairments meet, medically equal or functionally equal the listings. If so, and if the duration requirement is met, a finding of disabled will follow. If not, a finding of not disabled will result.

Under the regulations, if a child's impairments do not meet or medically equal a listing, the Commissioner will make a determination whether the impairments functionally equal the listing. 20 C.F.R. § 416.926a. To functionally equal a listing the impairments, "must be of listing-level severity: i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." (*Id.*). The six domains used include:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

20 C.F.R. § 416.926a (b)(1).

## IV.
## ISSUES

The ALJ determined plaintiff's impairments did not meet or medically equal a listed impairment. Therefore, the ALJ evaluated whether plaintiff's impairments, alone or in combination, functionally equaled a listed impairment and met the durational requirement. The ALJ found they did not. This Court is limited to reviewing only whether there was substantial evidence in the record as a whole to support the ALJ decision and whether proper legal standards were applied. Plaintiff presents the following issues:

1. The ALJ erred by failing to perform his special duty to more fully develop the record because plaintiff was not represented;

2. The audio tape of plaintiff's testimony was inaudible to the degree the case should be remanded for another administrative hearing; and

3. The ALJ decision is not supported by substantial evidence.

## V.
## MERITS OF THE CASE

### Hearing Transcript

In plaintiff's first point of error he contends the ALJ failed to adequately develop the record with an unrepresented claimant. Plaintiff does not point to any specific deficiencies other than arguing that the tape recording of the hearing did not adequately record, for transcription purposes, a substantial portion of plaintiff's ALJ hearing testimony.

Plaintiff's second point of error alleges that claimant's testimony was inaudible to the extent that the case should be remanded for a new hearing. The first and second points of error are related, if not identical.

Plaintiff is correct that an inaudible hearing tape can be the basis of a remand. The

critical consideration is whether the deficiencies prohibit meaningful judicial review. In this case, not only did the ALJ hear the plaintiff's testimony during the administrative hearing, but he set out, in the administrative decision, the critical parts of plaintiff's testimony. Plaintiff has not shown the ALJ's recitation and summarization of his testimony to be flawed, nor has plaintiff identified any prejudice from the untranscribed testimony.

First, it is hard to fault the ALJ for any alleged failure to develop the record. The hearing transcript, of course, was not prepared until after the ALJ hearing. There is no contention the ALJ was aware some of plaintiff's answers were not recording clearly enough or loudly enough. However, as stated above, the ALJ was present for all of plaintiff's answers and referenced then in his opinion. At page 20 of the transcript, the following statement appears:

> At his hearing before me Sandin testified that his home schooling includes learning computer graphics, and that he excels at this task. He stated that he is at the tenth grade level academically, and he reported no problems with this studies. He stated that he spends most of the day and evening at his computer, with rest breaks every hour, and a couple of meal breaks. He helps with the chores, and plays with and feeds the family dog. He stated that it is difficult for his friends to understand that he can not (sic) have an active physical life.

Consequently, it appears the ALJ adequately developed the record by taking testimony from plaintiff related to the six domains in question. Further, and as articulated by defendant, plaintiff has not shown any of the missing portions of plaintiff's testimony would bolster his position or prevent adequate judicial review. Remand is not required when plaintiff fails to show prejudice by the deficiencies he alleges. *Carey v. Apfel*, 230 F.2d 131, 143 (5th Cir. 2000). No prejudice has been shown and plaintiff's first two points of error do not warrant remand.

Substantial Evidence

Plaintiff next argues the ALJ decision was not supported by substantial evidence. The primary argument plaintiff makes under this ground and, in fact, in this entire appeal, is that Dr. Saadeh's report, found at page 291 of the transcript, warrants a determination of disabled. Dr. Saadeh's October 27, 2000 report stated as follows:

> [T]his is to certify that the patient above [Sandin J. Denton] has a significant history of fibromyalgia as well as severe allergic rhinitis. He also has severe asthma. He is currently under treatment with medications as well as immunotherapy. The patient in general is improving but he had attacks were (sic) his asthma can become quite severe with significant sinus infection. Although this child in general is doing better yet at times he can be severely ill and unable to breathe. In my opinion this child is a candidate for further evaluation for disability because of the severity of his symptoms.

(Tr. 291).

Other than this contention, the remainder of plaintiff's brief does not argue specific error and instead, constitutes a general attack on the ALJ's opinion. For example, defendant, in their brief, point out that plaintiff never argues the basis upon which he contends he should be found disabled on the grounds of functional equivalency. To be entitled to child benefits, the plaintiff must be markedly limited in at least two of six domains. The ALJ found plaintiff to have had no significant restrictions in four domains, *i.e.*, (1) acquire and use information, (2) attend and complete tasks, (3) interact with and relate to others, and (4) care for his own needs in an age appropriate manner. The ALJ found plaintiff to have "less than marked" restrictions in his ability for moving about and performing manipulation, and to have "marked restrictions" in the domain of physical health and well being. The ALJ's findings that plaintiff's restrictions were marked in the domain of physical health and well being was appropriate. As plaintiff points out, plaintiff suffers from significant allergies and asthma and these impairments impose substantial

restrictions on his physical health and well being. The record also shows, however, that the ALJ's other findings were correct. Plaintiff is quite capable in his computer skills and in his abilities to intellectually function. There is no evidence of "marked" restrictions in any of the other five functional domains and plaintiff has not made any specific argument with respect to the ALJ's findings as to the relevant functional domains.

Further, several of plaintiff's contentions fail to direct the Court to any administrative record citation supporting the contentions. For example, in his brief, at page 6, plaintiff states the report from plaintiff's treating physician, Dr. Saadeh, makes an abundant showing that plaintiff suffers from severe and disabling maladies, *citing* page 291 of the transcript. Defendant contends plaintiff overstates Dr. Saadeh's report. Review of the report shows Dr. Saadeh makes no finding of disability. Instead, he states plaintiff has a significant history of fibromyalgia, as well as severe allergic rhinitis and severe asthma. But nowhere does Dr. Saadeh state that these conditions are disabling. Instead, Dr. Saadeh states the plaintiff is currently under treatment with medications and that he is in general improving, although he has attacks which can become quite severe. Rather than stating that these conditions are "disabling," Dr. Saadeh merely states that plaintiff is a candidate for "further evaluation for disability." At page 7 of his brief, plaintiff states that whether plaintiff's condition is diagnosed as fibromyalgia or chronic fatigue syndrome, both impairments are severe and disabling, and references page 258 of the transcript. Page 258 of the transcript, however, makes no finding that plaintiff's fibromyalgia or chronic fatigue syndrome are disabling.

It is noted that the ALJ advised plaintiff of the lack of medical documentation. At the first ALJ hearing, held August 28, 2000, the ALJ questioned plaintiff's Father about plaintiff's

condition and requested medical evidence to support plaintiff's claim. The following exchange

occurred between plaintiff's Father and ALJ Nail:

Q: What I need is a doctor telling me that.
A: Yea, and - -
Q: You understand?
A: Yes, sir.
Q: In medical language - -
A: Yes, sir.
Q: - - telling me what the tests run were - -
A: Uh-huh.
Q: - - what the results of the tests were, and what the diagnosis from the tests [was].
A: Um-hum.
Q: See what I mean? I'm sure you understand - -
A: Sure.
Q: - - when the doctors talk to you, but I need to have something in this record from - -
A: Yeah.
Q: - - a medical doctor signed by him - -
A: Yeah.
Q: - - stating what the problem is.
A: Yeah.
Q: All right. Now - -
A: And I understand that.
Q: So is it fibromyalgia and asthma?
A: Yes, sir.
Q: And he has allergies?
A: Yes, sir.

(Tr. 51-52). Later in the hearing the ALJ reiterated this point saying:

Q: All the subjective - -
A: Um-hum.
Q: - - complaints must be supported by the objective evidence.
A: Yes, sir, objective evidence.
Q: I think you understand why it has to be done.
A: Sure. Yeah.
Q: And do not a problem. I'll give you time to get in the medical records and anything you want.
A: Um-hum.
Q: But you see, if you review the file, it does not indicate that he's severely ill.
A: Um-hum.
Q: And if that's all I have to go on - -
A: Um-hum.

Q: - - then you know what my conclusion has to be.

(Tr. 57).

On April 26, 2001, the initial ALJ rendered an unfavorable decision. (Tr. 108-113). The decision was based upon medical evidence noted in the record as Exhibits 1F - 10F.[1] The Appeals Council remanded the case for another administrative hearing on a procedural basis, *i.e.* non-receipt of the October 27, 2000 medical report of Dr. Saadeh by plaintiff. (Tr. 143). It appears ALJ Nail considered this report, but the case was remanded because plaintiff and his Father had not received a copy. Upon remand the ALJ was ordered to proffer this evidence to the claimant and to obtain additional evidence concerning the claimant's asthma, fibromyalgia and allergic rhinitis. (*Id*.). ALJ Cole, at the second administrative hearing, did not have to re-evaluate all of the prior evidence. He was ordered, however, by the Appeals Council, to proffer the Dr. Saadeh report to plaintiff and to obtain additional medical evidence on plaintiff's impairments. (Tr. 143).

Dr. Saadeh's October 27, 2000 report was proffered to plaintiff, as well as other medical records, and plaintiff was given an opportunity to respond. (Tr. 209-210, 211, 212-213, 217-218, 219-220, 221). The medical records included records dated September 18, 2002, from Dr. Lakhu J. Rohra (Tr. 293-306), a letter dated June 25, 2003, from Dori Wasmundt, a physician's assistant (PA) to Dr. Sidney Ontai (Tr. 307), and medical records dated June 21, 2001, to May 5, 2003 from Dr. Timothy J. Benton, (Tr. 308-310). Subsequent to plaintiff's second administrative hearing, PA Dori Wasmundt submitted medical records dated June 25, 2003. (Tr. 311-316).

---

[1] The Court notes in the record related to the first administrative hearing the exhibits were mislabeled. Upon remand this error was discovered and the exhibits properly labeled as exhibits 1F - 10F. (Tr. 4).

In addition to the medical report of Dr. Saadeh, set forth above, records were received from Dr. Lakhu Rohra. Plaintiff complained to Dr. Rohra of "Asthma since 4 years old, Allergic Rhinits last 11 years, [and] Fibromyalgia last 9 years." (Tr. 293). Doctor Rohra listed his impression of plaintiff's impairments as, "Bronchial Asthma, Allergic Rhinits, [and] Muscle Spasm." (Tr. 296). The doctor further determined the chest to have, "no deformity, respiratory excursions are adequate" and in the lungs to be clear with evidence of minimal wheezing. (*Id.*). Plaintiff had an EKG within normal limits and his chest x-ray revealed, "no evidence of any acute changes. There is slight evidence of hyperinflected lungs," (*Id.*). In his comments, Dr. Rohra noted that plaintiff had seen multiple physicians and been tested and further noted,

> All of these tests have been negative except for the muscle spasm, which is not very clear. He has been seen by his allergy specialist in Amarillo, who did extensive work and still is not able to find out what is actually causing this frequent episodes of allergic reactions, causing the flare-ups of his asthma and allergic Rhinitis. He has been on multiple medications, which are able to control it. He still does get frequent episodes of flare-ups requiring further management. It is not very clear whether these episodes of muscle spasm are related to any vascular disease or it could be because of anxiety causing spasm due to severe episodes of asthma and allergies. His physical examination shows some evidence of wheezing, there is no evidence of any abnormality as for his lungs, other than wheezing. Patient has no evidence of any other significant physical findings.

(Tr. 297). Dr. Timothy J. Benton submitted a letter dated September 17, 2002, stating he attempted to treat plaintiff's fibromyalgia which he classified as, "a chronic pain syndrome." (Tr. 309). However, Dr. Benton further stated, "He complained to me of pain June 21, 2001 and was treated for this; I received a letter from the patients (sic) mother dated September 9, 2002 stating this treatment did not help. The patient himself has not returned to see me regarding his pain syndrome." (*Id.*). From PA Dori Wasmundt's letter dated June 25, 2003, it appears plaintiff's treatment was transferred from Dr. Benton to Dr. Ontai when the Covenant Family

Practice closed. (Tr. 307). Subsequent to the ALJ hearing PA Wasmundt's records, dated June 25, 2003, were received and the diagnosis of plaintiff's impairments included allergic rhinitis, asthma, fibromyalgia, and scoliosis. (Tr. 315). The record further stated they discussed with plaintiff the benefits of pain management as well as use of over the counter medications to avoid narcotics given plaintiff's age. (*Id.*). PA Wasmundt wrote, "Pain seems to be moderately well controlled. Pt. [patient] given option of trigger-point injections if pain (neck) becomes severe...Pt. is not currently in physical therapy. Encouraged pt. to continue strengthening exercises for upper back & arms and conscious effort to improve posture." (Tr. 315-16). The plaintiff was instructed to return in six (6) months or as needed. (Tr. 316). ALJ Cole, in his May 17, 2004 decision, accurately summarized the medical evidence of record. (Tr. 19-20). He set out his summarization in his opinion:

> I have carefully considered the child's subjective complaints under the criteria set forth in 20 CFR 416.929 and SSR 96-7p. Although he has been diagnosed as having severe asthma and allergic sensitivities, there are inconsistencies in his reports of symptoms and functional restrictions. He testified and has reported during many of his visits to his doctors that his condition is controlled with his home environment, his medications, and by staying inside. On the other hand, he has reported frequent severe exacerbations. Moreover, the majority of his clinical examinations have resulted in no significant findings of either lung or musculoskeletal abnormalities. He has not required frequent medical attention, and has not required hospitalization for several years.
>
> ....
>
> Although his allergy testing found severe sensitivity to dog hair, the family keeps a dog, and Sandin is allowed to freely interact with [the] dog on a daily basis. Both Sandin and his parents have misrepresented to his doctors that he has been diagnosed as having fibromyalgia. Although Sandin complains of chronic fatigue and multiple musculoskeletal pain, the doctors have overall found those complaints to be vague and not substantiated by clinical examinations. The child's clinical examinations do not substantiate that he appears to be chronically ill, and he has no delayed development of any kind.

(Tr. 21). ALJ Cole found plaintiff's complaints related to his fibromyalgia not entirely credible and determined the record did not support a finding that plaintiff had a medically determinable impairment resulting from fibromyalgia. (*Id*.) The ALJ did find, however, that plaintiff suffered from the impairments of asthma and allergies and that these were severe although not so severe as to meet or medically equal a listing. (*Id*.). The ALJ then evaluated whether these impairments functionally equaled a listing. As previously stated, the ALJ found no evidence of significant restriction in plaintiff's abilities to acquire and use information, to attend and complete tasks, to interact with and relate to others, or to care for his own needs in an age-appropriate manner. (Tr. 22). Based upon the record as a whole and giving plaintiff the benefit of the doubt, the ALJ found plaintiff experiences less than marked restrictions in his capabilities for sustained physical activities, but did find he experienced marked restrictions in the domain of health and wellbeing. (*Id*.). In summary, the ALJ determined plaintiff experienced marked limitation in one functional domain, less than marked restriction in one domain, and no other significant functional limitations. (*Id*.). As such, the ALJ determined plaintiff was not disabled and these findings are not reversible under the "substantial evidence" standard. While the objective medical evidence supports plaintiff's complaints of asthma and allergies, the records also reflect these impairments are sufficiently controlled by medication and/or environment and that they do not markedly restrict plaintiff. As for the allegation of fibromyalgia, the objective medical evidence is scarce to nonexistent. While plaintiff's medical records reflect reports of fibromyalgia historically, *e.g.,* Dr. Saadeh states that plaintiff suffers from fibromyalgia, it is not clear whether this report was based upon plaintiff's statements or some other basis such as Dr. Saadeh's independent diagnosis. Plaintiff has not referenced any objective medical evidence in

the record supporting a diagnosis of fibromyalgia nor has plaintiff referenced the source of the diagnosis, *i.e.*, whether Dr. Saadeh's statement is based upon plaintiff's reporting his past history or is based upon Dr. Saadeh's medical examination of plaintiff.

Even giving plaintiff the benefit of the doubt and assuming, for purposes of argument, that his reports of a history of fibromyalgia are valid and that the absence of a medical diagnosis of fibromyalgia was an oversight or omitted from the medical evidence in error, plaintiff has failed to show such fibromyalgia or chronic pain syndrome met the level of a listed impairment. Nor has plaintiff shown that these conditions were so severe that they resulted in the degree of marked restrictions required for an award of minors benefits. Were this a case involving adult disability, rather than a child's disability, then the failure of the ALJ to find the plaintiff's fibromyalgia severe at step two of the proceedings might be a closer question. Here, however, the issue is whether such impairment resulted in "marked and severe functional limitations." Defendant correctly states that the standard for disability for a child is not only more stringent than that for an adult, but is more stringent than the previous children's disability evaluation standard.

While the Court sympathizes with plaintiff's plight, and while it is clear plaintiff suffers some restrictions, the record in this case is adequate and simply does not support plaintiff's allegation that there was insufficient evidence to support the finding of the ALJ. For these reasons, plaintiff's claim should be denied.

## VI.
## CONCLUSION

It is, therefore, the opinion and finding of the undersigned Magistrate Judge and

RECOMMENDATION to the District Judge that the decision of the defendant Commissioner finding the minor plaintiff not disabled be AFFIRMED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of March 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).